H. H. Clough & Company, Appellants, v. M. S. Bennett.

**Discretion:** AMENDMENT DURING TRIAL. The court, in its discretion, may, during the trial, permit defendant to amend his pleadings so as to enable him to plead an estoppel *in pais.*

**Continuance.** A continuance, to enable plaintiff to produce evidence to meet a question of estoppel, raised by an amendment of defendant's answer during the trial, is properly refused, where the court offers to postpone the trial from Saturday until Monday, which offer is declined; without a showing that the evidence desired could not have been obtained during the postponement.

**Interrogatories:** ULTIMATE FACTS. Interrogatories on the question of the validity of a sale, asking whether there was a delivery of the property, whether the delivery was conditional, and whether the seller was estopped to deny a delivery, are not objectionable for not calling for answers to ultimate facts.

*Appeal from Woodbury District Court.*— Hon. Scott M. Ladd, Judge.

Monday, October 12, 1896.

This is an action of replevin, to recover the possession of fifteen steers. There was a trial by jury, which resulted in a verdict and judgment for the defendant. Plaintiffs appeal.—*Affirmed.*

*Swan, Lawrence & Swan* and *Strong & Owen* for appellants.

*Wright, Hubbard & Bevington* for appellee.

Rothrock, C. J.—This is an action for the recovery of the possession of personal property. Each party to the suit claims to be the absolute and unqualified owner thereof. There are no side issues, and there is nothing in the case but the ordinary questions which arise upon the trial of an action of replevin. The

plaintiffs owned the steers. They acquired title to them by purchase, from a farmer or dealer in live stock, who brought them to the market at the Union Stock Yards, in Sioux City. The plaintiffs, being dealers in that kind of property at the stock yards, bought the steers. They were put into a pen in the stock yards, and a day or two after that, Clough & Co. contracted a sale of the cattle to one Baggs, who was also a dealer in live stock at the yards. As we understand it, the stock yards are kept and maintained by a company, as a place for buying and selling live stock. The owners of stock take it there for sale, and buyers go there to make purchases. Within one or two days after Baggs contracted with the plaintiffs for the cattle, the defendant, who is a farmer and cattle feeder, went to the stock yards to buy cattle, and bought the steers in controversy, from Baggs, through one Eisentraut, who made the sale for Baggs; and the cattle were weighed out from Baggs to the defendant, who started on his way home with them, and after driving them about twenty miles, he was overtaken by an officer with a writ of replevin, sent out by Clough & Co., the plaintiffs herein, and the cattle were taken from the defendant, and delivered to the plaintiffs The important and only real question in the case is, whether the cattle were delivered by the plaintiffs to Baggs, and the right of property thereby passed. Collateral to that, however, there is another question, which is, whether the plaintiffs are estopped by their conduct, from claiming, as against the defendant, that the cattle had not been delivered by the plaintiffs to Baggs. There is no question, that the defendant bought the cattle in good faith, and paid for them in the belief that he was acquiring title to the property.

The question as to whether the plaintiffs delivered the cattle to Baggs depends on the testimony of several witnesses, and also upon certain rules, regulations,

and methods of doing business at the stock yards. We will not repeat nor review the testimony of the witnesses. There was a fair conflict in the evidence as to the fact of a delivery, and, when the manner of transacting business at the yards is considered, the verdict of the jury finds abundant support in the evidence. Complaint is made because of certain rulings of the court against the plaintiffs, in the introduction of the evidence. A careful examination of these objections satisfies us that they are without merit. They appear to have arisen more from improper questions propounded to the witnesses than to any mistake made by the court as to the competency and admissibility of evidence.

II.   Before the close of the introduction of the evidence, the defendant, by leave of the court, and over the objection of the plaintiffs, amended his answer, by pleading that the plaintiffs stood by and knew that defendant purchased and paid for the cattle, and took them into his possession, without any objection being made by the plaintiffs. The plaintiffs thereupon filed a motion for a continuance. The motion was overruled. It is said the court erred in permitting the amendment to be made. This point is not well taken. It was a matter within the discretion of the court, and it does not appear that there was any abuse of discretion. The motion for continuance was rightly overruled. It was submitted to the court and decided on Saturday. The court offered to postpone the further trial of the case until the following Monday, to enable the plaintiffs to produce further evidence on the questions of estoppel. This offer was declined by the plaintiffs, and there is no showing that the plaintiffs could not have procured any additional evidence they desired by the time to which the court offered to postpone the case.

III.    The court submitted four special interrogatories to the jury, which, with the answers thereto, were as follows: "Int. I.    Was it a part of the agreement of sale of the steers in controversy, between plaintiffs and Baggs, that the said steers should not be delivered to Baggs until paid for? Ans. No. Asa Joslyn, Foreman.    Int. 2.    Did plaintiffs, through Clough, in presence of Baggs, direct Haakinson to deliver the steers in controversy to Baggs unconditionally? Ans. Yes. Asa Joslyn, Foreman.    Int. 3. Did plaintiffs deliver the steers in controversy to Baggs under the contract of sale between plaintiffs and Baggs? Ans. Yes.    Asa Joslyn, Foreman.    Int. 4.    Do you find that plaintiffs are estopped from claiming that plaintiffs did not deliver the steers in controversy under the contract of sale? Ans. Yes. Asa Joslyn, Foreman."    It is urged that the special interrogatories were erroneously submitted to the jury, because the answers to Nos. 1 and 2 are without support in the evidence.    We think there was a fair conflict on both these questions, and that it was not the duty of the district court, nor is it within our province, to set aside the findings.    It is also said that questions 2, 3, and 4 were erroneously submitted to the jury, because they do not call for answers to ultimate facts.    It appears to us that this contention is not sound.    The mere reading of the questions is the best answer which can be made to the objection.

Other objections are made to rulings of the court, which are not of sufficient importance to require special consideration.    The reading of the record impresses one with the thought that the case was fairly and correctly tried by the court, and the verdict is supported by a very decided preponderance of the evidence.    It is essentially a fact case, with no principle of law involved except elementary and well established rules.    The judgment of the district court is AFFIRMED.